JOHN H. MOORE & SONS v. E. A. ADAMS, d/b/a
ADAMS CLAY PRODUCTS. —324 S. W. (2d) 499.

Middle Section.   February 27, 1959.

Certiorari denied by Supreme Court June 5, 1959.

David Rutherford, Nashville, and Dave Ballon, Memphis, for John H. Moore & Sons.

Arthur Crownover, Jr., and Charles K. Cosner, Nashville, for Adams Clay Products.

FELTS, J. This was a suit brought in the Court of General Sessions by plaintiffs, John H. Moore & Sons, against defendant, E. A. Adams, d/b/a Adams Clay Products, upon a cause of action stated in the warrant as follows: "for $1,282.50 past due and unpaid on a contract for brick and labor". That court rendered judgment for plaintiffs for the amount sued for.

From that judgment defendant appealed to the Circuit Court and there filed a plea of setoff, averring that plaintiffs were indebted to him in the sum of $852 for brick he had furnished them and they had not paid for; and

that this sum should be set off against plaintiffs' recovery, if anything was found to be due them. The Circuit Judge, trying the case without a jury, rendered judgment for plaintiffs for $1,282.50 and costs.

Defendant brought the case to this Court by appeal and has assigned errors insisting that the evidence does not support the judgment but shows that defendant is not indebted to plaintiffs in the sum sued for or in any other sum. We think this contention is sustained by the proof.

Plaintiffs were general contractors in Memphis, and defendant was engaged in business in Nashville as salesman for brick manufacturers and other like products. Plaintiffs had been awarded the contract to furnish the materials and construct the Tigrett Junior High School building near Jackson, Tennessee, and they purchased from defendant the brick for this construction. It appears that while there is a standard size of brick ($2\frac{1}{4}''$ x $3\frac{3}{4}''$ x $8''$), the brick of most manufacturers vary in size, so that there is a tolerance of $\frac{1}{8}$ inch in the dimensions allowed by the American Society of Testing Material Specifications.

After most of the brick had been delivered at the job site, plaintiffs complained that the brick were undersized. Defendant agreed to meet them at the site to look into the matter. When defendant arrived, he found that Mr. Moore had not come. He talked to Moore's foreman on the job and the architect, and quite a lot of the brick were measured. It was found that some of them were undersized, some oversized, but they came within the permitted tolerance, though they were "a little shy of $3\frac{3}{16}''$ on the bed side''—that is, the side on which the mortar is put.

Defendant then called Mr. Moore by telephone in Memphis and stated that while he "did *not* concede that the brick were undersized as a total proposition", he "would agree that after those brick were laid in the wall", "if it was *determined by actual count*" that more brick were required *"because they were undersized"*, he would furnish such additional brick without charge and would pay the cost of laying them, which plaintiffs said was $90 per thousand (italics ours).

Defendant also stated that he would furnish plaintiffs, without charge, a sufficient number of bricks "in a 3¾" bed size" for the corners and jambs, and would pick up an equal number of brick he had already delivered. Mr. Moore accepted these proposals, and defendant next day wrote a letter confirming their agreement, sending a copy to the architect and the original to Mr. Moore. Mr. Moore put this letter in evidence. Its material parts are set out in the Appendix, infra, at page 501.

It appears without dispute that defendant did furnish plaintiffs, without charge, 7,700 brick "in a 3¾" bed size". But plaintiffs did not return or offer to return an equal number of the brick already furnished, but kept and used all of them as well as some 14,000 more brick which they bought from defendant and for which they have not paid him. It appears that he is prosecuting another separate suit against them for the price of those brick.

The only matter involved in this suit is the claim of plaintiffs against defendant for $1,282.50, as the cost of laying 14,290 brick at $90 per thousand. Plaintiffs claim a right to recover this amount by the terms of the writing above referred to, while defendant likewise bases his

defense upon such terms. Referring to that writing (infra, at page 502), it will be observed that the promise of defendant was as follows:

"We will furnish the number of additional brick *determined to be actually required to complete the job because of the undersize brick furnished* [italics ours] without additional cost. Also the number of additional brick required will be compensated to include the labor and material cost for laying the additional brick on the basis of $90.00 (ninety dollars) per 'm'. * * * However the intent is to allow whatever additional brick are required because of the undersize brick furnished on the shipments already made, on the following basis:

"A—Furnish the additional brick determined to be required because of the undersize brick without charge.

"B—Pay $90.00 per 'M' for labor & material for the additional brick referred to in 'A'."

Thus defendant's promise to furnish the extra brick and to pay the cost of laying them was conditioned upon (1) the brick being undersized, and (2) upon it being determined that, because they were undersized, an additional quantity of brick were required to complete the job. Complainant, suing on such promise, had the burden of alleging and proving both the condition and the performance of it. Exchange & Deposit Bank v. Swepson, 69 Tenn. 355, 357; Town of Franklin v. Hermitage Engineering Co., 12 Tenn. App. 434, 441.

Plaintiff failed to carry that burden—failed to prove either that the brick were undersized or that it had

been actually determined that, because of their being undersized, additional brick had been required. Defendant testified, without contradiction, that the brick were not undersized but within the permitted tolerance. He also testified that he had tried to get complainants to meet him at the site to determine whether the brick were undersized and to determine whether, by reason of their being so, an additional quantity had been required. But they refused to do that.

So, we think plaintiffs failed to establish their right to any recovery or to maintain this suit.

Defendant also assigns for error that the Trial Judge erred in overruling his plea of setoff. We think he is in no position to make this assignment. It appears that the matter pleaded as setoff was an independent demand and might be the basis for an independent suit (Wood v. Cannon County, 25 Tenn. App. 600, 602, 166 S. W. (2d) 399); and that he is prosecuting such a suit against plaintiffs on that matter. After he so testified, the following colloquy took place between his counsel and the Trial Judge.

"The Court: No counter-suit here for them [for the 14,250 brick.]

"Mr. Crownover: No sir, I asked that it be considered as a counter-suit but they didn't deem that it should be, so it is not. It is filed as a separate suit, Your Honor."

This, we think, was clearly an abandonment of the plea of setoff. Certainly, after making such a statement and leading the Trial Judge to believe there was no

counter-suit or plea of setoff, defendant cannot say the Trial Judge erred in overruling his plea of setoff.

It results that the judgment of the Circuit Court is reversed and this suit is dismissed at the cost of plaintiffs J. H. Moore & Sons.

Hickerson and Shriver, JJ., concur.

### Appendix

"This will confirm our conversation of Dec. 6, 1955 while in Jackson, Tenn., also telephone conversation with Mr. Charles Ross Architect. The problem discussed being the brick from Owensboro Brick & Tile Co., having an average of $2\frac{1}{8}''$ in height and are a little shy of $3\frac{3}{16}''$ on the bed.

"We will furnish a sufficient number of brick for corners in a $3\frac{3}{4}$ bed size without charge, picking up an equal number of the brick already delivered to the job. The number of such brick is not an issue since the number determined to be required for the corners and jambs will be furnished.

"We will furnish the number of additional brick determined to be actually required to complete the job because of the undersize brick furnished without additional cost. Also the number of additional brick required will be compensated to include the labor and material cost for laying the additional brick on the basis of $90.00 (ninety dollars) per 'm'. To illustrate if 1,000 additional brick are required because of the undersize brick we will furnish the 1,000 brick on the site without charge plus paying $90.00 for laying and material cost. It is understood that you figure 12 'm' additional brick will be required in which event we will furnish them without

charge plus paying $1,080.00 for the laying and material cost based on $90.00 per 'm'. However the intent is to allow whatever additional brick are required because of the undersize brick furnished on the shipments already made, on the following basis:

> "A—Furnish the additional brick determined to be required because of the undersize brick without charge.

> "B—Pay $90.00 per 'M' for labor & material for the additional brick referred to in 'A'.

"It is believed that this will be *adequate* compensate for the additional cost involved and we feel sure that there will be no further difficulty. We also want to cooperate with you in every respect in doing a most satisfactory job on this building."