**BARNARD AND BURK**, a Partnership

v.

**The CITY OF PULASKI, TENNESSEE.**

**Civ. A. No. 478.**

United States District Court
M. D. Tennessee,
Columbia Division.

Jan. 4, 1963.

George Mathews, Hynes, Mathews &
Lane, Baton Rouge, La., and Edwin F.
Hunt, Boult, Hunt, Cummings & Con-
ners, Nashville, Tenn., for plaintiffs.

Tom Moore, Pulaski, Tenn., and Cecil
Sims, Bass, Berry & Sims, Nashville,
Tenn., for defendant.

GRAY, District Judge.

Under a contract dated October 24,
1955, plaintiffs' exhibit 1, and amended
a year later in particulars not pertinent
here, the plaintiffs agreed to provide
engineering services in the planning and
construction of a municipal natural gas
system for the defendant city. This ac-
tion is to recover a balance allegedly due
the plaintiffs on their fee as provided
in the contract. Each party contends the
language of the contract pertaining to
the computation of the plaintiffs' fee is
unambiguous, but they are nearly $15,-
000.00 apart on the amount of the fee
they calculate from this unambiguous
language. The court agrees that the
language necessary to be considered is
not ambiguous, but finds no basis for
the calculations made by either party.

The contractual formula set the fee at six percent of "the Total Bond Issue, or Issues, sold to defray the cost of the Project." Considered alone, this language might support the plaintiffs' contention that the fee should be computed on the $700,000.00 face amount of the bond issue subsequently sold, although there is room for argument over the phrase, "to defray the cost of the project."

There is no necessity for pursuing that argument, however. Elsewhere in the contract, the phrase, "Total Bond Issue," is specifically divorced from the face amount of the bond issue. It is defined, instead, to mean "all funds established and set apart for the development and completion of the gas project, whether these funds be obtained from the sale of bonds or otherwise." Clearly, then, the face amount of the bond issue and the "Total Bond Issue" as used in the formula would turn out to be the same amount only if that precise amount should be "established and set apart for the development and completion of the gas project."

The initial quest, therefore, is for evidence showing funds so "established and set apart." Ordinarily, in governmental fiscal matters, funds are "established and set apart" by legislation or by executive action pursuant to legislation. In this record there is evidence of legislation directing that the proceeds of the bond issue be set apart in three funds—a Sinking Fund, a Construction Fund, and a Contingency Fund. This is found in Section 8 of the bond resolution of January 22, 1957, plaintiffs' exhibit 6, as amended by the resolution of February 13, 1957, plaintiffs' exhibit 7. But there is no evidence of any action, either by the Board of Mayor and Aldermen or any executive or ministerial officer, actually setting apart the funds as directed or otherwise. Even if the resolution referred to were considered sufficient to "establish and set apart" the proceeds of the bond issue for other purposes, it is useless for present purposes because the amounts so set apart cannot be determined from the resolution, either independently or by reference to other portions of the record.

Thus the inquiry reaches an impasse before any necessity arises for considering possibly doubtful language. To establish a breach of the contract, the burden was on the plaintiffs to show that funds were actually "established and set apart" for the purposes specified in the contract formula and that the total of the funds so set apart was such that application of the contract formula would establish their right to a fee in excess of that offered by the defendant. Having failed to produce such proof, they have failed to establish their right to any recovery. Moore & Sons v. Adams, 45 Tenn.App. 364, 368–369, 324 S.W.2d 499 (M.S.1959).

This disposes of the case but it may be helpful to the parties to indicate the court's view that even if the amounts actually set apart in the three funds mentioned above could be determined from this record, the result would be the same.

The bond resolution, as amended, contained the following provisions with reference to the establishment of the three funds:

"That from the proceeds of the sale of the bonds the following dispositions shall be made and deposited in special fund or funds in a bank or banks in the City of Pulaski:

"(1) All accrued interest and an additional sum sufficient to provide interest on the bonds for a period of two years from their date, which has been determined to be the period of construction and for six months thereafter, shall be deposited in the Sinking Fund Account and shall be used only for the payment of said interest.

"(2) An amount sufficient to provide funds to pay for the contract bid price, according to the plans and specifications prepared by

Barnard and Burk, Engineers, legal, fiscal and engineering fees shall be deposited in the Construction Fund Account and be used only for the payment of said construction, legal, fiscal and engineering fees.

"(3) The remaining proceeds shall be deposited into a fund to be known as the Contingency Fund Account. The sum of $50,000 of said fund shall be retained for the purpose of making additions and improvements not heretofore provided for in the plans and specifications for the distribution system and any additional funds remaining in said fund shall be considered as working capital and miscellaneous funds available for unforeseen expenses and contingencies in the construction and operation of the system."

"The Project" was specifically defined in the contract to mean "a Municipally-owned NATURAL GAS DISTRIBUTION SYSTEM AND CONNECTING TRANSMISSION MAIN" [capitalization in the original]. The phrase "to defray the cost of the Project" is further explained by reference to the paragraph immediately preceding it where the same phrase in the same context is extended by the words "on which Plans and Specifications are prepared in accordance with written authority referred to" elsewhere in the contract. And the parties' intention to use the phrases in a limiting sense is indicated by their use of the phrase "to finance the Project" when the entire bond issue was intended to be indicated.

■ Applying the intent of the parties as indicated by their own instrument in accordance with the authorities cited by the plaintiffs, Portsmouth Baseball Corporation v. Frick, 278 F.2d 395 (2 Cir. 1960), Whiting Stoker Co. v. Chicago Stoker Corporation, 171 F.2d 248 (7 Cir. 1948), it follows that they intended that a fund or funds should be "established and set apart" for purposes of defraying the costs of planning and constructing the physical plant.

Each of the funds provided for in the resolution was dedicated, in whole or in part, to purposes other than the purposes specified in the contract formula— "to defray the cost of the Project" and "for development and completion of the gas project."

The fund contemplated by the contract would certainly not include the funds which, under the resolution, were to be deposited in the Sinking Fund Account. These funds were intended for the payment of interest. Interest on bonds is not ordinarily considered within the capital cost of property, either in common understanding or in the decisions of courts or regulatory bodies where the question arises. See Annot., 72 A.L.R. 1232 (1931).

The Construction Fund Account, under the resolution, would have included funds to pay the actual construction costs, which would, of course, be a part of the funds on which the fee was to be based. Although it may seem odd that city officials would agree to pay a fee based on a percentage of a figure including funds set apart for paying the selfsame fee, it seems that Pulaski's officials did so in this case, and the plaintiffs introduced evidence, uncontradicted in the record, that this is not unusual. Accordingly the fund contemplated might have been properly dedicated to paying engineering fees as part of the "development" cost. It may also be true that legal fees might arise in sufficiently direct relationship to the "development and completion" to be included in the purposes of the fund. However, the Construction Fund Account was also to include funds for fiscal fees. Applying the same reasoning applied to the interest payments, such fiscal fees would fall outside of the contractual definition.

The third fund provided for in the resolution, the Contingency Fund Account, was to include funds for unforeseen contingencies arising during construction, which could well be included in the purview of the definition of the fund on which the fee was to be based. But this fund also was to include $50,-

000.00 for making additions and improvements not provided for in the plans and specifications, and other funds for "working capital" and unforeseen expenses in operation of the system. Clearly, these are outside the limits of the contractual definition.

Therefore no fund dedicated to the specified purposes under the contract would be shown to have been "set apart" from funds intended for other purposes even if the deposit slips for the three funds mentioned in the bond resolution were in evidence.

The clerk will enter judgment forthwith for the defendant.