IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 7, 2012 Session

## DAVID R. SEATON, ET AL. v. WISE PROPERTIES-TN, LLC

**Appeal from the Chancery Court for McMinn County**
**No. 24307     Lawrence H. Puckett, Judge[1]**

---

**No. E2011-01728-COA-R3-CV-FILED-JUNE 22, 2012**

---

This appeal concerns a contract for the purchase and sale of property. The buyer refused to close pursuant to the terms of the contract and stopped payment on its earnest money check. The sellers brought an action for specific performance and breach of contract. The buyer alleged that the sellers breached the contract first. The trial court found in favor of the buyer, holding that because the sellers did not cause title to be examined ten days from the effective date of the contract, the buyer had a right to withdraw the earnest money payment. The sellers appeal. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

H. Wayne Grant, Chattanooga, Tennessee, for the appellants, David R. Seaton and Paul Ray Seaton.

Gary R. Patrick, Chattanooga, Tennessee, for the appellee, Wise Properties-TN, LLC.

### OPINION

In late 2007 or early 2008, Wise Properties-TN, LLC[2] ("Wise") and Paul Ray ("Ray") Seaton's real estate agent, Tad Bromfield, discussed the possibility of a real estate transaction

---

[1]Sitting by interchange.

[2]John S. Wise, III, President and Sole Member.

involving parcels of land in Athens, Tennessee, owned by Mr. Seaton and his son, David R. Seaton (collectively "the Seatons"). According to Wise, it was interested in acquiring the land for a commercial car wash and an apartment complex. Along with Mr. Bromfield, the primary facilitator of the negotiations was William ("Bill") Alt, a Chattanooga attorney. It appears that Mr. Alt had represented Wise in a number of legal matters; however, he had represented the Seatons for a much longer period of time. Mr. Alt never discussed any potential conflict of interest with Wise. He communicated with both Wise and the Seatons about the parcels at issue, and proceeded to draft relevant documents.

In January 2008, the parties circulated a draft purchase and sale agreement ("the Agreement") whereby Wise would purchase the Seatons' land in Athens for $1,000,000 total, $50,000 of which was to be paid in escrow as a down payment. Pertinent sections of the Agreement provided as follows:

> **3. Stipulations.** The following provisions and stipulations are a part of this Agreement:
>
> A.) The parties agree that the Purchaser shall have the right for a period of 45 days from the Effective Date of this Agreement to inspect the Property following the execution of this Agreement, which shall include the right to come upon the Property and perform such tests and examinations thereof as it may deem appropriate. Purchaser agrees that upon completion of such tests and examinations it will promptly restore the Property to its prior condition. Seller agrees to hold Purchaser harmless and will indemnify them against any claim, liability, loss, damages, or litigation arising from or related to the Seller or its representatives being upon the Property or any activities conducted with respect to the Property.
>
> * * *
>
> **5. Title Evidence.**
>
> (a) No later than Ten (10) days **[?]**[3] the Effective Date, Seller, shall cause title to the Property to be examined and upon receipt furnish to Purchaser a copy of the commitment for title insurance on the Property (the "Title

---

[3] A word or phrase is missing. The Seatons contend that the Agreement specified that the Seller (the Seatons) would cause the title to the property to be examined no later than ten days "following" the effective date of the Agreement, but assert that the document does not fix any time within which a copy of the commitment for title insurance must be furnished to the Buyer (Wise).

Commitment"). If (i) the Title Commitment shows that Seller does not have good and marketable title to the Property in fee simple; or (ii) the Property is subject to any defects, liens, encumbrances, easements, rights-of-way, covenants, reservations or restrictions, other than the Permitted Exceptions, then Purchaser shall, within Two (2) days of its receipt of the Title Commitment, . . . give notice in writing to [Seller] of any objections to the title to the Property. The matters that are set forth in such written notice are hereinafter referred to as "Title Objections."

(b) Seller shall, upon receipt of notice of the Title Objections, promptly undertake and complete at its expense all actions as are necessary to satisfy or remedy the Title Objections. If Seller has not so satisfied or remedied the Title Objections by the Closing Date, as hereinafter defined, then Purchaser may: (i) Terminate this Agreement and the Earnest Money shall be returned to Purchaser, together with the expense incurred by the title company providing the Title Commitment; or (ii) Unilaterally extend the Closing Date for a period not exceeding thirty (30) days to allow the Seller to satisfy or otherwise cure the Title Objections, or (iii) Elect to waive the Title Objections and close on the purchase of the Property without reduction in the purchase price. Notwithstanding the foregoing, monetary liens may be satisfied out of the proceeds due Seller at Closing.

\* \* \*

**10. Default.** Should either party default in the performance of any of its obligations set forth in this Agreement to be performed prior to the Closing, which default is not cured after five (5) days written notice thereof, or, should there be a breach by either party of any of their respective representations and warranties as contained herein, which has not otherwise been specifically addressed in other provisions of this Agreement, then the non-defaulting or non-breaching party shall be entitled to exercise all remedies as may be available to it by law, in equity or by statute and the non-defaulting party shall be entitled to recover its costs as a result of such default or breach, including reasonable attorney's fees and litigation costs.

If Purchaser defaults hereunder, Seller agrees, in consideration of the services rendered by the Real Estate Broker, that should it elect to retain the Earnest Money deposited with this Escrow Agent, it shall be divided equally between the Seller and the Real Estate Broker after satisfaction of any expenses incurred by Seller relating to this Agreement. In no event shall Real Estate

Broker's portion of the Earnest Money exceed the sum which Real Estate Broker would have received had the purchase and sale been normally consummated, any excess being retained by Seller. In the event Seller obtains specific performance of this Agreement, the commission due the Real Estate Broker shall be paid in full at the time that the Seller receives the purchase price proceeds.

* * *

**14. Offer and Acceptance.** If this offer is not accepted by Monday, January 28, 2008, then this proposal shall be deemed terminated and neither party shall have any obligation or claim against each other arising from such failure to enter into this Agreement.

**15. Miscellaneous.**

* * *

(d) Time is of the essence of this Agreement. Wherever a date certain is established, specified, or defined in this Agreement for the payment of any sum of money or the performance of any act or thing, it is of the essence of this Agreement.

The closing date was set in the Agreement for April 18, 2008.

Wise signed the Agreement but it appears that Mr. Alt revised it. The revised Agreement contained at least two significant changes: 1) deletion of the right to termination that existed in the inspection provision,[4] and 2) change in the description of the subject property. While the parcels were described in the initial Agreement by metes and bounds, as well as a measure of total acreage, the property in the revised Agreement was described only as "portions of the real property which are within the deed descriptions of" three specific deeds. The revised Agreement contained no measure of acreage, nor any description of the metes and bounds of the property at issue.

On January 28, 2008, Ray Seaton executed the Agreement as revised by Mr. Alt. Wise signed the revised Agreement on January 30, 2008, after the required execution date. Wise, however, made two changes to the Agreement: 1) the escrow payment was reduced

---

[4]No one admits to removing the right to terminate language.

from $50,000 to $5,000; and 2) the 45-day inspection period was increased to 75 days.

Mr. Alt subsequently drafted an amendment to the Agreement: 1) he changed the "Effective Date" of the Agreement from January 28 to January 30, 2008; 2) he changed the 45-day inspection period to 75 days; 3) he rejected Wise's proposed revision of the $50,000 escrow fee; and 4) he set forth some details regarding the Seatons' agreement to partially finance Wise's purchase. Wise and Ray Seaton both executed the amendment on February 7, 2008.

On February 20, 2008, Mr. Alt contacted David Siklosi, a title attorney in Athens, to raise certain specific questions relating to potential issues regarding the title to the property; subjects addressed included rezoning, a possible utility easement, and a claimed right-of-way. On March 26, 2008 – nearly two months after the effective date in the Agreement – Mr. Siklosi was asked if he could insure a title to the Seatons' property that accounted for a roadway easement at issue. However, immediately after sending this letter, and before Mr. Siklosi could respond, Mr. Alt contacted him and told him to take no action.

During this time period, Wise had been searching for commercial financing. Despite the fact that it could secure some financing through the Seatons, Wise needed another significant source of capital before it could purchase or develop the Seatons' property as planned. According to Wise, by the end of March 2008, it became clear that adequate financing for the proposed project was not available.[5] Around two weeks before the closing date in the Agreement, on April 3, 2008, Wise stopped payment on the $50,000 earnest money check. Wise later testified as follows:

> A.  . . . [A]t some point I guess the inspection period was running out. – I didn't – anyway, I just remember getting a phone call and Tad said, listen, your inspection period is going to run out tomorrow and we're going to need to cash the check. And I said, well, Tad, we're not cashing the check because I can't get financing right now.
>
> And he said, well, per the contract we've got – and I said, well, I'm going to stop payment on the check then because we're not cashing the check because I don't have the money and I don't have financing. So the deal – you know,

---

[5]In its amended answer to the Seatons' complaint, Wise asserted that it had engaged in a good faith effort to obtain financing. Several banks were approached but all declined to extend financing. Wise claimed that the true intention of the parties prior to the execution of the Agreement was to make Wise's performance contingent upon the ability to obtain financing. The Seatons argue that the Agreement did not condition Wise's purchase of the property on the ability to obtain financing.

until I get some financing in place there's no sense tying up a bunch of money.

* * *

A. . . . As far as I know, everybody was very clear that this deal was a long ways from going through because everybody was involved in the whole bank scenario. And there was no need to get a title policy and there was no need to get any of that because the deal was not looking like it was going to go to fruition. . . .

Mr. Wise told the Seatons: "I do want to continue working on the deal, but the contract will have to be renegotiated."[6]

After Wise repudiated the Agreement by stopping payment on the earnest money check, Mr. Alt attempted to revive the deal contained in the Agreement; however, his attempts were unsuccessful. On June 4, 2008, Mr. Alt informed Wise by letter that, due to its "failure of performance" under the Agreement, the Seatons "declare[d] the contract of purchase to be terminated." On October 10, 2008, the Seatons filed this lawsuit.

Wise moved for summary judgment on May 10, 2011, arguing that under Tennessee law, a seller of real estate is not entitled to hold a buyer responsible for breach when the seller did not perform all prerequisite conditions contained in the Agreement. Wise asserted that the Seatons had not provided proof of clear title or a title insurance policy. After a hearing, the trial court ruled as follows from the bench:

I believe that I'm going to enforce the agreement, paragraph five, that the title was required to be – I'm going to read it and quote it, "No later than ten days the effective date, seller shall cause title to the property to be examined and upon receipt furnish a copy of the commitment for title insurance on the property, and then in parentheses, (the Title Commitment.)"

Now, that was never done. It's not even in dispute it was never done within the ten days. And there was no waiver because it wasn't known. It was something that only would be known to the buyer if the sellers chose to

---

[6]The Seatons argue that Wise waived their breach because it continued to seek financing after April 3, 2008. Mr. Wise apparently was still interested in obtaining a smaller parcel of two or three acres for a car wash, but the Seatons would not agree to a new deal. According to Mr. Wise, at the time he stopped payment on the escrow check, he did not realize that the right to terminate had been removed from the Agreement.

divulge it. There's no triggering of the default because he didn't know it either until – and could not know it unless the sellers told him.

Now, this contract is required to have things done promptly. Time is of the essence as part of this contract. Everybody is bound by that. As soon as the property was – the title was examined it says upon receipt they were to furnish to the purchaser a copy of the commitment for title insurance. So based on the *Nichols* case I'm going to grant summary judgment.

In other words, he had a right to withdraw his deposit. There doesn't need to be anything more said.

And the contract was definitely repudiated by his act of notifying you he was withdrawing his deposit. And then, of course, it was also treated as terminated by the sellers, treated as terminated effective upon his withdrawal of his escrow deposit. So that's the ruling of the Court.

An order granting summary judgment that incorporated by reference the above reasoning was filed on July 26, 2011. The Seatons filed a timely appeal.

## II. ISSUES

The issues raised in this appeal by the Seatons are as follows:

1. Did the trial court err in granting Wise's motion for summary judgment based on the Seatons not providing Wise with a commitment for title insurance.

2. Did the trial court err in granting Wise's motion for summary judgment because causing title to the property to be examined within ten days from the effective date of the Agreement was not a condition precedent under the Agreement.

3. Did the trial court err in granting Wise's motion for summary judgment because not causing title to the property to be examined within ten days from the effective date of the Agreement was not a material breach of the Agreement.

4. Did the trial court err in applying the incorrect summary judgment standard

to reach its erroneous conclusion that summary judgment was proper because the Seatons treated the Agreement as terminated.

5. Did the trial court err in ruling that Wise did not waive performance of the Seatons' promise to cause the title to the property to be examined within ten days from the effective date of the Agreement.

## III. STANDARD OF REVIEW

The applicable summary judgment standard in this case was set out in the cases of *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76 (Tenn. 2008), and *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008). In *Martin*, the Court set out the standard as follows:

The moving party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; accord *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). Accordingly, a properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party fails to make this showing, then "the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails." *McCarley*, 960 S.W.2d at 588; accord *Staples*, 15 S.W.3d at 88.

The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *see also McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n. 5. Both methods require something more than an assertion that the nonmoving party has no evidence. *Byrd*, 847 S.W.2d at 215. Similarly, the presentation of evidence

-8-

that raises doubts about the nonmoving party's ability to prove his or her claim is also insufficient. *McCarley*, 960 S.W.2d at 588. The moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, 270 S.W.3d at 5. We have held that to negate an essential element of the claim, the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party. *See Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004). If the moving party is unable to make the required showing, then its motion for summary judgment will fail. *Byrd*, 847 S.W.2d at 215.

If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215. The nonmoving party may satisfy its burden of production by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*McCarley*, 960 S.W.2d at 588; accord *Byrd*, 847 S.W.2d at 215 n. 6. The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party. *McCarley,* 960 S.W.2d at 588. "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A disputed fact presents a genuine issue if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

*Martin*, 271 S.W.3d at 83-84.


# IV. DISCUSSION

A condition precedent assumed by a party must be fulfilled by that party before

performance by the other party can be demanded. *Interstate Bldg. Corp. v. Hillis*, 66 S.W.2d 597, 600-02 (Tenn. Ct. App. 1933). The party seeking to enforce a contract has the burden of proving that it has performed conditions precedent to the liability of the other party. *John H. Moore & Sons v. Adams*, 324 S.W.2d 499, 501 (Tenn. Ct. App. 1959).

Mr. Siklosi stated in his affidavit that the first time he had any communication with the Seatons was 20 days after the effective date of the Agreement. He noted that "[n]either Bill Alt nor any person asked me to examine the title, nor perform a title search of the property. . . ." At the hearing, the trial court noted:

> THE COURT: Well, [the Agreement] says "shall cause title to the property to be examined," and Mr. Siklosi's affidavit says nobody ever asked him to examine the property. They went straight to the problem with the property, which was this easement. That's all Mr. Alt ever did.
>
> * * *
>
> . . . [I]t says you will cause within ten days an examination of the title. And it's without dispute that you all didn't do that.
>
> * * *
>
> . . . [Y]ou never asked for an examination of the title according to Mr. Siklosi.

"When time is of the essence, the failure of a party to meet a condition precedent gives the other party a basis to rescind the contract." *See* 77 Am. Jur.2d *Vendor and Purchaser* § 80 (1975); 91 C.J.S. *Vendor & Purchaser* § 104b (1955); *Alexander & Shankle, Inc. v. Metro. Gov't of Nashville & Davidson County*, No. M2006-011680-COA-R3-CV, 2007 Tenn. App. LEXIS 521, *25 (Tenn. Ct. App. Aug. 13, 2007) (noting that "a contract providing that time is of the essence is enforceable, and failure to meet the specific and explicit time requirements constitutes a breach which permits the non-defaulting party . . . to terminate the contract"). Time requirements under such clauses mandate that courts answer "the question of whether failing to complete performance on time constitutes a material breach" by looking to see "whether 'time is of the essence' with respect to the contract." *Groner v. On-Site Grading, Inc.*, No. E1999-00219-COA-R3-CV, 2000 Tenn. App. LEXIS 270, *10-11 (Tenn. Ct. App. Apr. 28, 2000). Section 15(d) of the Agreement in the instant case provided that "[t]ime is of the essence of this Agreement."

The Seatons argue that causing title to the property to be examined within ten days

from the effective date of the Agreement was not a condition precedent to enforcement, but rather just a promise or covenant they undertook. They also contend that not causing title to be examined within ten days from the effective date of the Agreement was not a material breach. Further, the Seatons assert that Wise waived or excused performance of the requirement that the title be examined within ten days from the effective date of the Agreement by continuing negotiations and attempting to close the transaction. Thus, according to the Seatons, they had a reasonable time within which to comply with the terms of the Agreement and were ready and able to perform. The Seatons additionally contend that their obligation to perform would have been futile, as recognized by Mr. Wise's admission that he was unable and unwilling to perform under the Agreement because of the inability to secure financing. Therefore, they argue that any duty they had to examine title and provide Wise with a copy of the commitment for title insurance prior to the closing date was suspended and the default by Wise occurred prior to the time when they were required to fulfill any condition precedent.

As found by the trial court, it is undisputed that the Seatons did not order a title examination within ten days of January 30, 2008, and never issued a title commitment. "[A] vendor . . . guilty of failure to perform a prerequisite condition . . . is not in [a] position to rely upon any failure to perform by the vendee." *Nichols v. Blocker*, No. 87-110-II, 1988 WL 39569, at *5 (Tenn. Ct. App. Apr. 29, 1988). The Seatons did not act in accordance with this requirement of the Agreement, especially since every date specified or established in the Agreement was "of the essence." Given that the failure to timely perform contractual obligations where "time is of the essence" constitutes a material breach, and that timely performance is a condition precedent under such clauses, Wise was entitled to rescind the Agreement and the Seatons, as a matter of law, cannot compel Wise to perform. *Groner*, 2000 Tenn. App. LEXIS 270 at *10-11. The material breach by the Seatons thus preceded Wise's decision to stop payment on the earnest money check, and gave Wise the ability to "terminate" the contract. *Akins v. Tedder*, 1988 Tenn. App. LEXIS 648, *8-9 (Tenn. Ct. App. Oct. 21, 1988).

In *Akins*, we acknowledged that "[t]he party entitled to insist on the timely performance of a contract for the purchase and sale of real property can waive the condition either expressly or by acts or conduct clearly indicating an intention not to hold the other party to the strict terms of the contract." *Id.* at *9. However, "if there is to be a waiver, there must be some proof of consideration or of estoppel." *Id.*

The argument by the Seatons that Wise waived their nonperformance is without merit. Wise's conduct does not represent a clear or express intent to waive any condition. There is no allegation that Wise "actively induced" the Seatons to breach the title commitment clause or interfered with their ability to perform their obligations. There also is no evidence

-11-

that the Seatons paid Wise to ignore the strict time requirements of the contract. The actions by Wise after the Seatons' breach – attempted renegotiation and failed attempts to secure financing – do not constitute waiver as a matter of law. The Seatons cannot establish that Wise waived any right it had to hold them to their contractual obligations.

The Seatons also argue that the trial court applied an incorrect summary judgment standard of review because it allegedly found that they were not entitled to specific performance as a remedy due to their termination of the Agreement in the June 4, 2008 letter. The trial court observed that the Seatons' attorney stated clearly that they treated the contract as "terminated" and mentioned toward the end of its ruling that the Agreement "was also treated as terminated by the sellers . . . upon [Wise's] withdrawal of [the] escrow deposit." We do not find, however, that the trial court made a specific ruling. Nowhere in its ruling did the trial court consider or refer to the post-*Hannan* standard. Moreover, under either standard, the Seatons materially breached the Agreement and lost the ability to require Wise's performance as a matter of law.

We find that the evidence does not preponderate against the findings of the trial court that Wise was entitled to an award of summary judgment.

## V.  CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for any further proceedings that may be required. The costs on appeal are taxed to the appellants, Paul Ray Seaton and David R. Seaton.

_____
JOHN W. McCLARTY, JUDGE